UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MAXALBUMUS INC, JIE YU also known as
Yvonne Yu and CHI HEN HUANG also known as
Max Huang,

                             Plaintiffs,                **REPORT AND**
                                                 **RECOMMENDATION**
                -against-                             CV 18-3450 (JMA) (ARL)

DIRECT MOVERS LLC, SALIH DELKY and
KEN JACKSON,

                             Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      The plaintiffs, Maxalbumus Inc, Jie Yu ("Yu") and Chi Hen Huang ("Huang"), commenced this action on June 13, 2018, against the defendants, Direct Movers LLC, Salih Delky and Ken Jackson, asserting claims for breach of contract, unjust enrichment, promissory estoppel, conversion, fraud and fraudulent inducement. On April 2, 2019, the plaintiffs moved for a default judgment. By order dated April 3, 2019, District Judge Spatt referred the motion to the undersigned to determine whether the motion should be granted and, if so, the appropriate amount of damages, costs, and/or fees to be awarded upon such determination. On December 9, 2019, the undersigned recommended that the plaintiffs' motion for a default judgment be denied with leave to renew. On March 26, 2020, the undersigned's recommendation was adopted in its entirety. On April 25, 2020, the plaintiffs renewed their motion for a default judgment, the application now before the Court. For the reasons set forth below, the undersigned respectfully recommends that the motion be granted.

## BACKGROUND

I.    **Factual Background**

The following facts are taken from the complaint as well as the plaintiffs' renewed motion for default judgment and the exhibits attached to that motion.  Although many of the facts were discussed in the Court's prior report, the facts will be repeated herein for ease of reference.

The plaintiffs Yu and Huang manage and run Maxalbumus, Inc., a corporation that provides services including photography, videography, wedding and event planning.  Compl. ¶¶ 10, 11.  Maxalbumus also sells photography equipment and materials for making photography products.  *Id.* ¶ 10.  In or about December 2017, the plaintiffs signed up for an exhibit stand at the 2018 Wedding & Portrait Photography Conference and Expo (the "Expo") in Las Vegas, Nevada, the largest wedding and portrait photography show in the country.  *Id.* ¶ 12.  The Expo was scheduled to take place from February 26, 2018 to February 28, 2018.  *Id.*  Yu and Huang intended to market and sell photography equipment, materials and products to the attendees of the Expo and to promote the business of Maxalbumus.  *Id.* ¶ 13.

In preparation for the Expo, the plaintiffs imported wood boards, a roll laminator, alloy frames, glitter laminator papers and other materials from China and collected samples of products to show potential buyers.  *Id.*  Yu and Huang then searched for shipping companies to move their products from New York to California.[1]  *Id.* ¶ 14.  To that end, Yu and Huang contacted a company called Fast Moving Inc.  *Id*.  Yu and Huang explained to Fast Moving Inc.'s representative, Ken Jackson ("Jackson"), that their products had to be delivered to

---

[1] The complaint does not make clear why the products were first shipped to California rather than Nevada.

California before the Expo was held, and Jackson guaranteed that they could be delivered before the Expo began. *Id.* ¶ 15.

On February 12, 2018, Jackson offered to move the plaintiffs' products for $1,699.64. *Id.* ¶ 16. According to the plaintiffs, the price was based on the volume of the products not their weight. *Id.* Yu accepted the offer and verified that the products would be delivered before February 21, 2018. *Id.* ¶ 17. Following the parties' discussion, the plaintiffs paid a deposit of $475 as per Jackson's request and scheduled a pick-up for February 14, 2018. *Id.* ¶ 18.

On February 14, 2018, two movers "showed up" and placed the products onto their truck. *Id.* ¶ 19. One of the movers then passed a three-page blank form to Huang and asked him to sign the blank form, promising that he would be delivering a proper contract. *Id.* Huang noticed that the name of the company on the form was "Direct Movers" instead of "Fast Moving Inc." *Id.* Two days later, Yu and Huang tried to contact Jackson, by both email and telephone, to obtain an update on the delivery but received no answer. *Id.* ¶ 21. It was not until the next day that the defendant, Salih Delky ("Delky"), finally picked up the phone. *Id.* ¶ 22. Delky stated that he was the owner of the company. *Id.* He told the plaintiffs that because their products were heavy, the cost of the delivery would be $4,200.00 rather than $1,699.64. *Id.* Delky further stated that unless Yu and Huang paid him $2,500.00 that day, the products would not be delivered on time. *Id.* Huang was shocked by Delky's demand as he had verified with Jackson that the shipment price would be based on volume instead of weight. *Id.* ¶ 23.

Yu and Huang did not immediately pay the defendants $2,500. Instead, during the days that followed, Yu and Huang repeatedly asked Delky to confirm the delivery date and reminded him that the products had to be delivered to California by February 21, 2018, to be in time for Expo. *Id.* ¶ 24. In addition, Huang spoke to Jackson in order to clarify to what company he

3

should issue the check. *Id.* ¶ 25. Ken responded that the company name was, in fact, Direct Movers LLC, not Fast Moving Inc. *Id.* Shortly thereafter, Huang and Yu went to the office of "Fast Moving Inc." to resolve the dispute over the cost of transporting the goods. *Id.* ¶ 26. When they arrived, they were met by Delky who stated "if you don't pay anything today, I will increase the fee to $5,000 . . .. And your stuff will be delivered 21 days later." *Id.* Huang and Yu did not pay the increased fee and instead repeated their request that the products be timely delivered so that they would not miss the Expo. *Id.* ¶ 27.

Ultimately, Huang and Yu realized that the defendants were not going to deliver their products on time so they tried to repurchase photography products and materials and carried the newly purchased products with them to California. *Id.* ¶ 28. On February 21, 2018, Huang and Yu flew to California to prepare for the Expo. *Id.* ¶ 29. The following day, they drove to Las Vegas and participated at the show. *Id.* ¶ 30. According to the plaintiffs, they only made a profit of $200 from the materials and products they managed to collect at the last minute. *Id.* ¶ 31.

Following the Expo, Huang and Lu found out that Fast Moving Inc. was not a registered corporation in New Jersey. *Id.* ¶ 32. In addition, to date, the defendants have refused to return the plaintiffs' goods, which Huang and Yu value at $163,593.55. Huang Decl. ¶¶ 7, 9, 12. Specifically, the products were purchased from three different companies, Ji Nan Wang Jing, BoZan-Shanghai Zhongke Industrial Co., Ltd. and Shanghai Beiyan Album Co., Ltd., in the amounts of $78,107.40, $35,435.60 and $23,345.04, and $18,320.61, respectively. *Id.* ¶¶ 13-6. Moreover, the plaintiffs aver that they purchased photo booth supplies costing $1,000.00 and computers costing $2,196.96, which were also loaded on the truck. *Id.* ¶¶ 5-6. The plaintiffs also paid for container fees in the amount of $4,752.12 and travel costs to Las Vegas amounting to $7,311.47, for which they seek to be reimbursed as they did not have the good to show at their

4

booth. *Id.* ¶¶ 19-20.  Accordingly, the plaintiffs allege that they are owed $169,915.47 in damages, plus 9% interest.[2]

## II. Procedural Background

As stated above, the plaintiffs filed the complaint in this action on June 13, 2018.  ECF No. 1.  The summons and complaint were served on Direct Movers LLC, by service on Delky at 3221 Bergenline Avenue, Union City, New Jersey, on July 17, 2018.  ECF No. 6.  The summons and complaint were served on Delky at 2210 Grand Avenue, Apt. 1, North Bergen, New Jersey, the following day.  ECF No. 5.  The defendant, Ken Jackson was served on September 11, 2018, at Direct Movers by service on its secretary, Barbara Veloz.  ECF No. 7.

On November 21, 2018, the plaintiffs filed a request for a certificate of default as to all of the defendants with the Clerk of Court.  ECF No. 8.  That request was denied.  The Clerk of the Court found that the declaration accompanying the request had failed to comply with Local Civil Rule 55.1(b)(1) and (3) in that it did not demonstrate that the parties were not infants, incompetents, or in the military service, and there was no indication that the pleading had been properly served.  On December 7, 2018, the plaintiffs renewed their request to the Clerk of the Court.  ECF No. 9.  Three days later, the Clerk of the Court certified that the defendants Direct Moving LLC, Delky and Jackson had not filed answers or otherwise moved with respect to the complaint.  ECF No. 10.

## DISCUSSION

### I. Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.  First, the Clerk of the Court enters the party's default.  Then, as here, a motion for a

---

[2] The Court notes that the damages outlined in the plaintiffs' papers amount to $170,469.20; however, the Court will adopt the lower amount requested in the papers.

default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

   II.  **Breach of Contract**

   A breach of contract action is generally pleaded by stating "(1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Kausal v. Educ. Prods. Info. Exchange Institute*, 105 A.D.3d 909, 910, 964 N.Y.S.2d 550 (2d Dep't 2013). In this matter, the plaintiffs aver that they entered into an oral agreement with

6

Direct Movers, doing business as Fast Moving, on February 12, 2018, pursuant to which Fast Moving agreed to ship their photography products to California by February 21, 2018, for $1,699.64. Huang Decl. Ex. 5. The discussions between representatives of the companies made clear that the cost of the transport was to be based on volume rather than weight. Compl. ¶ 16. After the defendants picked up the plaintiffs' goods, Delky attempted to unilaterally change the terms of the agreement claiming the goods were too heavy. *Id.* ¶ 22.

Moreover, although Yu and Huang acknowledge that they also signed a blank written form on the day the movers arrived, it appears that no formal agreement was ever forwarded to the plaintiffs. *Id.* ¶ 19. However, the plaintiffs have attached a copy of the written estimate they received from Fast Moving on February 12, 2018, confirming the that Fast Moving had agreed to ship their photography products to California for $1,699.64. Huang Decl. Ex. 5. In light of the above, the Court finds that the plaintiffs have adequately alleged the terms of the contract and the consideration to be paid.

In addition, according to the complaint, the plaintiffs paid the defendants a $475 deposit, as requested. *Id.* ¶ 18. While the plaintiffs never paid the balance of the $1,699.64, the allegations in the complaint make clear that they only refused to make further payments after Delky unilaterally raised the price for the shipment. *Id.* ¶¶ 22, 26-7. Finally, it is uncontested that the defendants kept property belonging to the plaintiffs for which they paid $158,405.61. Moreover, the plaintiffs incurred travel expenses to the Expo despite the fact that they did not have sufficient goods to show. Huang Decl. ¶ 20. For these reasons, the Court finds that the plaintiffs have adequately pled a breach of contract claim as against Direct Moving and its owner Delky, as well as entitlement to $169,915.47 in damages.[3]

---

[3] The plaintiffs have not provided sufficient support for its breach of contract claims against Jackson who appears to be an employee of Direct Moving, and the undersigned recommends that that claim be dismissed.

### III.     Prejudgment Interest

"It is well settled that state law applies to an award of prejudgment interest in a diversity action in federal court." *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 291–94 (S.D.N.Y. 2002)(citing *Schwimmer v. Allstate Ins. Co.,* 176 F.3d 648, 650 (2d Cir.1999).  Under New York law, prejudgment interest is awarded as a matter of right for contract damages.  *Id.* (citing CPLR § 5001(a) (McKinney 1992)).  Accordingly, the undersigned also finds that prejudgment interest is due to the plaintiffs.

"Under CPLR § 5001(b), a prevailing party is entitled to prejudgment interest 'computed from the earliest ascertainable date the cause of action existed . . .'" *Id.*  (citing CPLR § 5001(b) (McKinney 1992)).   In this case, the plaintiffs entered into the agreement with the defendants on February 12, 2018.  However, February 21, 2018, is the day the defendants promised to deliver the goods but failed to do so.  Accordingly, the Court also finds that the plaintiffs are entitled to prejudgment interest from February 21, 2018, and respectfully recommends that the plaintiffs be awarded $169,915.47 as against Direct Moving and Delky, plus the statutorily mandated prejudgment interest in the amount of 9% per annum from February 21, 2018 to the date the judgment is entered.[4]

### OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below.  Counsel for the plaintiffs shall serve a copy of this Report and Recommendation on the defendants upon receipt and shall file proof of service with the Court.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to

---

[4] Given the Court's findings, the undersigned need not address the plaintiffs' causes of action for unjust enrichment, promissory estoppel, conversion, fraud and fraudulent inducement since they are duplicative of the breach of contract claim.

8

the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
         December 4, 2020                              _____/s/_____
                                                        ARLENE R. LINDSAY
                                                        United States Magistrate Judge